UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| Joseph Hartsock, | ) |
| Plaintiff, | ) |
| v. | ) |
| Sarah Snowden, | ) |
| Robert Duprey, | ) |
| Brandy Leek, | ) |
| Nurse Brewer, | ) |
| Centurion, | ) |
| Donna Bumgardner, | ) |
| Heather Russell, | ) |
| Tim Phegley, | ) |
| David Mikles, | ) |
| McCluskey, | ) |
| Hacker, | ) |
| Webb, | ) |
| Schuetz, | ) |
| Houghett, | ) |
| Adam Cornelson, | ) |
| Mike Rains, | ) |
| Dushuan Zatecky, | ) |
| Duggan, et al. | ) |
| Defendants | ) |

Cause No.   2:23-cv-00477-MPB-MKK

<div style="border:1px solid red;">

**FILED**

**10/02/2023**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

</div>

**VERIFIED CIVIL RIGHTS COMPLAINT[1]**

### I.    INTRODUCTION

This is a civil complaint brought pursuant to the First & Eighth Amendment, ADA, 42 U.S.C. § 12101 et seq., Rehabilitation Act, 29 U.S.C. § 701,and state law claims, for denying Plaintiff constitutionally adequate medical care, retaliation for exercising his First Amendment activities, and not reasonably accommodating his physical disabilities.

### II.    PARTIES

1.  Plaintiff, Joseph Hartsock, IDOC#966460, was at all relevant times a U.S. citizen confined at Putnamville Correctional facility ("ISF")-1946 West U.S. Highway 40, Greencastle, IN 46135.

---

[1] "[A] verified complaint-signed, sworn, and submitted under penalty of perjury-can be considered 'affidavit material'" if it otherwise complies with Rule 56 of the Federal Rules of Civil Procedure. *James v. Hale,* 959 F.3d 307, 314 (7th Cir. 2020) (citing *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)).

Hartsock's Migraine Lawsuit

2.  Defendant Centurion ("Centurion") is a private for-profit business contracted with IDOC to provide medical services to IDOC inmates. -1946 West U.S. Highway 40, Greencastle, IN 46135.

3.  Defendant Mrs. Snowden ("Snowden"), Robert Duprey ("Duprey"); Brandy Leek ("Leek") and Brewer ('Brewer") are private contractors employed by Centurion to provide medical services at ISF including following the terms of the contract between Centurion and IDOC. -1946 West U.S. Highway 40, Greencastle, IN 46135.

4.  Defendant Captain Houghett ("Houghett"), M. Hacker ("Hacker") Donna Bumgardner ("Bumgardner"), David Mikles ("Mikles"), C/W McCluskey, C/W Schuetz, Duggan (C/O #003) Adam Cornelson, Mike Rains, Dushuan Zatecky, C/M Webb, and Tim Phegley ("Phegley") are employed by IDOC and assigned to ISF with duties that include maintaining the safety and well-being of inmates.-1946 West U.S. Highway 40, Greencastle, IN 46135.

5.  Defendant Heather Russell ("Russell") is employed by IDOC and assigned to ISF with duties as the ADA Coordinator at ISF, which include reasonably accommodating inmate's disabilities. She is being sued in her official capacity as ADA Coordinator, as well as individual and official capacity as Bumgardner's supervisor individual - 1946 West U.S. Highway 40, Greencastle, IN 46135.

6.  All Defendants were acting under color of state law at all relevant times.

### III.   JURISDICTION & VENUE

7.  This Court has original jurisdiction pursuant to 28 U.S.C. § § 1331 and 1343 over Plaintiff's cause of action under the Constitution of the United States, 42 U.S.C. § 1983 and Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 701, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.  Plaintiff's claims for injunctive relief and authorized by Fed. R.Civ. P., Rule 65.

9.  Plaintiff's claims for supplemental jurisdiction of Indiana state tort law are authorized pursuant to 28 U.S.C. § 1367.

10. Venue lies in the United States District Court for the Southern District of Indiana because ALL of the Defendants reside/ work in the Southern District as well ongoing events or omissions giving rise to Plaintiff's claims occurred in Greencastle, Indiana, 28 U.S.C. § 1319 (b)(1)-(2) & (c) 1.

11. Divisional revue is the Terre Haute Division because the events leading to the claims for relief arose in Putnam County.

Hartsock's Migraine Lawsuit

### IV.    Previous Lawsuits by Plaintiff

12. Plaintiff has filed NO other lawsuits dealing with the same facts included in this action or otherwise relating to his imprisonment.

### V.    Equitable Tolling

13. Federal tolling statutes of limitations were in effect while Plaintiff was exhausting his administrative remedies. *Scanlon v. Drew*, 2000 U.S. App. LEXIS 18776 (7th Cir. July 31, 2000) (unpublished) (The statute of limitations may be tolled while a prisoner exhausts his administrative remedies.)

### VI.    Exhaustion

14. Plaintiff has exhausted all available administrative remedies to him with respect to all claims. Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). In most circumstances, the appropriate procedural mechanism is a motion for summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. Id.

15. On June 17, 2023 (See attached Exhibit "A")[2], on June 30, 2023 (See attached Exhibit "B") and on July 17, 2023 (See attached Exhibit "C") Plaintiff submitted an Emergency Grievance via Grievance mailbox in the Offender chow hall, in a sealed white envelope with the Grievance Specialists' name, Donna Bumgardner, on it, into the institutional

---

[2] Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (a), prisoners must properly exhaust all available administrative remedies before pursuing claims in federal court. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). A prisoner must exhaust his grievances in accordance with prison procedural rules. Id. (citing *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). The purpose of the exhaustion requirement is to alert prison officials to the problem and allow for corrective action. Id. (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)). Exhaustion is an affirmative defense, with the burden of proof on the defendants. Id. at 650 (internal citations omitted).
In order to exhaust his administrative remedies, *a prisoner need not file multiple, successive grievances raising the same issues if the objectionable condition is continuing*. Id. Separate complaints about particular incidents are only required if the underlying facts or the complaints are different. Id. Rather, when a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the exhaustion requirement. Id (emphasis added)

Hartsock's Migraine Lawsuit

mail within Plaintiff's housing unit, <u>as well as</u>, in a sealed white envelope with the ISF Grievance Specialists' name, Donna Bumgardner, on it, into the institutional mail within ISF's Law Library, which is then hand delivered to Donna Bumgardner at the Grievance Office daily, and ISF's Grievance Box in the Offender Dining room, because Plaintiff's grievances somehow repeatedly do not get filed by ISF Grievance Specialist.

16. On September 5, 2023 Plaintiff submitted an Emergency Grievance via Grievance mailbox in the Offender chow hall, in a sealed white envelope with the Grievance Specialists' name, Donna Bumgardner, on it, into the institutional mail within Plaintiff's housing unit, as well as, in a sealed white envelope with the ISF Grievance Specialists' name, Donna Bumgardner, on it, into the institutional mail within ISF's Law Library, which is then hand delivered to Donna Bumgardner at the Grievance Office daily,  and ISF's Grievance Box in the Offender Dining room, because Plaintiff's grievances somehow repeatedly do not get filed by ISF Grievance Specialist. (See attached Exhibit "O").

17. On September 5, 2023 ISF Donna Bumgardner told Plaintiff and everyone else in the Law Library that "Per policy [Bumgardner does] not have to process typed grievances."

18. Plaintiff filed his tort claim on August 8, 2023.

## VII.     <u>Factual Allegations</u>

19. Plaintiff is a U.S. citizen incarcerated in the Indiana Department of Correction.

### <u>i.</u>     <u>APPLICABLE IDOC POLICY</u>

20. IDOC policy 00-02-301 mandates that all acts of reprisal for utilizing the grievance process be investigated by the grievances department.

21. IDOC policy 00-02-202 mandates reasonable accommodations for inmates with physical disabilities to ensure that daily living activities may be completed with dignity or not be excluded from participation in or be denied the benefits of the services, programs, or activities of the department.

### <u>ii.</u>     <u>PLAINTIFF MEETS THE IMMINENT DANGER OF SERIOUS HARM</u>

22. Plaintiff meets the imminent danger of serious harm described supra

### <u>iii.</u>     <u>BACKGROUND</u>

23. Plaintiff has been admitted to the hospital three times prior to 2009 for head injuries, including one while incarcerated in IDOC in 2008.

Hartsock's Migraine Lawsuit

24. Plaintiff has been diagnosed with chronic migraines since 2015. A physiological disorder for ADA purposes. (See attached Exhibit "E-1").

25. Plaintiff is on Centurion's Chronic Care program because of his severe chronic migraines and chronic vertigo, just as he was when Wexford, Corizon, and others provided medical services to IDOC inmates.

26. Plaintiff has been prescribed a vast amount of different medications to treat his severe daily migraines, but has never received diagnostic testing to rule out what type of migraines they are.

27. Plaintiff's migraines are triggered by light, sound, and smell.

28. Plaintiff was diagnosed with photosensitivity in 2017 and then severe photosensitivity in 2020. Nothing but darkness prevents the pain and blindness associated with this. Plaintiff had a medically order and/or had been reasonably accommodated on 6-14-21 (at WCC), 11-9-22, and 12-18-22 to wear his hat and sunglasses at all times in order to participate in programs, services, or activities of IDOC. Plaintiff eye specialist have recommended Plaintiff wear his hat and sunglasses at all times. (See attached Exhibit "D-F"). A sensorial disorder for ADA purposes. Since the diagnosis Plaintiff's eye sight has gradually gotten worse.

29. Plaintiff was diagnosed with vertigo in 2016. A physiological disorder for ADA purposes. (See attached Exhibit "E-1"). Plaintiff's migraines make the vertigo medication he takes significantly less effective.

30. Plaintiff's migraines make his vertigo worse, causing nausea, vomiting, and loss of consciousness, which is documented within Plaintiff's medical records and had been explained to NP Duprey in prior medical visit(s) by Plaintiff. It has also recently caused memory loss and Epistaxis, of which Plaintiff can't access medical services about, see infra.

31. Non-contact Epistaxis are indicative of internal head and/ or facial medical problems and extremely alarming. (See attached Exhibit "N")(Cleveland Clinic website search for "Non-contact nose bleeds")

Hartsock's Migraine Lawsuit

32. Prior to July 13, 2023 Plaintiff was provided a reasonable accommodation to wear his hat at all times (except for identification purposes) to aid in reducing the pain caused by light and associated migraines. (See attached Exhibit "D-F" and "J")

### iv.    MIGRAINES AS A SERIOUS MEDICAL NEED

33. Plaintiff's migraines meet the serious medical need standard.

34. The Chronic pain caused by migraine headaches constitutes a serious medical need and is a disability under ADA.

35. Prior to June 9, 2023, Nurse Practioner Duprey prescribed Meloxicam for Plaintiff's migraines, just as many other doctors prior to him. Plaintiff's migraine pain usually is debilitating and requires treatment by a physician. Thus, it is possible for intense migraine headaches to constitute a "serious medical need." See *Clas v. Torres*, 549 F. App'x 922, 924 (11th Cir. 2013) (accepting Clas's allegations of intense migraine-like symptoms as demonstrative of a serious medical need); *Miller v. Beard*, 699 F. Supp. 2d 697, 712 (E.D. Penn. 2010) ("An inmate might be able to demonstrate that migraine headaches rise to the level of a serious medical need that a lay person would recognize, but only if the inmate can provide evidence that the migraines are disabling."). *Harris v. Ball*, No. 6:21-CV-06157 2022 U.S. Dist. LEXIS 71846, at *11 (W.D. Ark. April 4, 2022) (denial or delay of medical care for his migraines.)

36. Even Circuit Court precedent has concluded that Migraines can meet the serious medical need standard. See *Moore v. Liszewski,* No. 1:07-cv-1173, 2009 U.S. Dist. LEXIS 89060, 2009 WL 3156711, at *4 (N.D. Ill. Sept. 28, 2009) (finding that plaintiff's self-reported migraines did not amount of a serious medical need because she was never diagnosed with migraines), rev'd on other grounds, *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011).

### v.    Severe Photosensitivity as a Serious Medical Need

37. Sunlight and indoor lighting causes Plaintiff blindness, blurred vision, burning, profuse tearing, severe itching, redness, drying of the eyes, and **triggers** migraines.

38. Of course, the need to treat blindness is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See id.; *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (finding blindness a serious medical need and stating: "Although blindness in one eye is not life-threatening, it is no trifling matter either. It is

not a bump or scrape or tummy ache. Monocular blindness is the loss of the function of an organ."). That Plaintiff did not suffer additional physical injuries as a result of the blindness or loss of vision, such as the type of injury that might result from a fall, see *Koehl,* 85 F.3d at 88, is not determinative, since Plaintiff "need not await a tragic event" before suffering harm violative of the Eighth Amendment, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

### vi.    CHRONIC PAIN IS A SERIOUS MEDICAL NEED[3]

39. Plaintiff had previously been placed on Chronic Care in 2015, due to his migraines and was on chronic care for migraines at all relevant times herein. This is inline with IDOC Health Care services Directive 3.01A (III) (A) stares," Patients with chronic health conditions such as asthma, hypertension, diabetes, high blood cholesterol, HIV, seizure disorder, Hepatitis C, and other major medical illnesses must be identified and enrolled in a chronic care clinic.

40. When Plaintiff experiences migraines, the rear right side of Plaintiff's head fells like he is being stabbed repeatedly with a knife and the left side of his head feels like a 600lbs weight is laying on it. The pain scale varies, from 5-10 on a pain scale of 1-10.

41. When evaluating whether a medical need is serious, the court looks "for physical injury 'that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic pain.'" *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)); see also *Lewis v. McLean,* 864 F.3d 556, 563 (7th Cir. 2017) (noting that "a medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.") (cleaned up).

### vii.    Collectively or in combination these are a serious medical need

42. Collectively or in combination the medical conditions described supra **Sections iii-vi**, are a serious medical need.

### viii.    SO OBVIOUS A LAYPERSON WOULD RECOGNIZE THE NEED FOR TREATMENT[4]

---

[3] Chronic pain can also constitute an objectively serious medical condition when a reasonable doctor or patient would find that pain important and worthy of treatment, or when it interferes with the plaintiff's daily activities. See *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (internal citations omitted).

[4] *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005)

Hartsock's Migraine Lawsuit

### a. Migraines

43. Plaintiff's migraines are so debilitating that they prevent Plaintiff from doing almost anything, forcing him to lay down, cover up, and wait them out.

44. The rear right side of Plaintiff's head fells like he is being stabbed repeatedly with a knife and the left side of his head feels like a 600lbs weight is laying on it.

45. Of the 51 days Plaintiff remembered to log his daily migraines, after NP Duprey let his migraine medication expire (6-27-23) and then refused to renew it, Plaintiff has lost consciousness 34 times during those days because of his migraines, this number does not include the days Plaintiff forgot to log his migraines. (See attached Exhibit "G" Hartsock's Migraine Log).

46. For purposes of the Eighth Amendment, loss of consciousness qualifies as a serious medical need, since even a lay person would easily recognize the necessity for a doctor's attention. *Boey v. Briley,* No. 02 C 4693, 2003 U.S. Dist. LEXIS 18730, (N.D. Ill. Oct. 30, 2003).

### b. Severe Photosensitivity:

47. Plaintiff cannot see without protection for his eyes from the light.[5]

### ix. Therapeutic equivalence

### a. Migraines:

---

[5] Of course, the need to treat blindness is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See id.; *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (finding blindness a serious medical need and stating: "Although blindness in one eye is not life-threatening, it is no trifling matter either. It is not a bump or scrape or tummy ache. Monocular blindness is the loss of the function of an organ."). That Plaintiff did not suffer additional physical injuries as a result of the blindness or loss of vision in his right eye, such as the type of injury that might result from a fall, see *Koehl,* 85 F.3d at 88, is not determinative, since Plaintiff "need not await a tragic event" before suffering harm violative of the Eighth Amendment, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

Hartsock's Migraine Lawsuit

48. The NSaids sold to Plaintiff on commissary are not therapeutically equivalent to Meloxicam, they are also limited in quantity each week/month thereby preventing Plaintiff access to them daily, *even if he had the funds to purchase them.*

49. The Federal Drug Administration states that drugs are therapeutically equivalent when one drug "can be substituted with the full expectation that the substituted product will produce the same clinical effect and safety profile as the prescribed drug." FDA, "Drugs@FDA Glossary of Terms," https://www.fda.gov/drugs/drug-approvals-and-databases/drugsfda-glossary-terms#TE (last updated Nov. 14, 2017). Furthermore, drugs are considered therapeutically equivalent only if they are pharmaceutical equivalents, i.e. they "contain the same active ingredient(s); dosage form and route of administration; and strength." Id.

### b. Severe Photosensitivity:

50. As of yet, there has been no therapeutic equivalence of relief from the pain causing light that wearing a hat and sunglasses at all times does, as Plaintiff also wears sunglasses when he sleeps so he doesn't accidentally wake up without protection, as the bathroom and street lights are very bright.

### x. EIGHTH AMENDMENT DENIAL OF MEDICAL CARE

### a. Migraines:

51. On June 9, 2023 NP Duprey conducted Plaintiff's six month Chronic Care visit at his cell door within restricted housing. This is uncommon, as an at cell visit like this, isn't protocol because medical visits are normally conducted in a medical room within restricted housing since the type of visit conducted by Duprey allowed all inmates and staff on the range to hear Plaintiff's medical problems[6], the one inch thick door and industrial fans blowing inhibited communications, as well as Duprey could not physically examine Plaintiff since there was a one inch thick door with a very small window in between Plaintiff and Duprey. Plaintiff filed a HIPPA grievance about it to Snowden because Plaintiff has witnessed other medical staff regularly doing these cell door medical visits. (See attached Exhibit "H").

---

[6] HIPAA prohibits the disclosure of medical records without the patient's consent. See 42 U.S.C. §§ 1320d-1 to d-7

Hartsock's Migraine Lawsuit

52. NP Duprey **had prior knowledge** that Plaintiff had been clinically tested with many other migraine related medications prior to this June 9, 2023 Chronic Care visit. The failure and/or adverse consequences with respect to many medications (or lack thereof) which is documented within Plaintiff's medical records and had been explained to NP Duprey in prior medical visit(s) by Plaintiff, as well as that meloxicam was therapeutically safe for Plaintiff.[7] Duprey lied to Plaintiff during this visit that he would "renew all of [Plaintiff's] medication." (See attached Exhibit "I").

53. As a result of NP Duprey refusal to renew Plaintiff's migraine medication, Plaintiff suffered unnecessary suffering, intense chronic pain, severe anxiety and depression, not knowing if he was going to be able to get adequate medical care for his severe chronic migraines.

### b. Severe Photosensitivity:

54. Every building at ISF has bright white fluorescent tube lighting that cause's plaintiff extreme pain, among other ailments, when wearing only sunglasses because none of Plaintiff's sunglasses are dark enough to protect his eyes from the light while light enough to allow him to see.

55. On 7-13-23 Plaintiff found out from Capt. Houghett who said she was told by Nurse Brewer that Nurse B. Leek removed the portion of Plaintiff's medical permit to wear his hat indoors. There was no penological justification for this. As Leek knew Plaintiff had not been assessed by medical staff or the eye specialist prior to this removal. The failure to abide by a medical permit related to a disability could constitute interference with "treatment once prescribed," ***Estelle v. Gamble,*** 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

56. Nurse Brewer knew that Leek did not have the authority to revoke Plaintiff's medical permit for his hat only the specialist, but Brewer still passed along false information to Capt. Houghett as Plaintiff was not assessed by medical staff or the eye specialist prior to this removal. Nurse B. Leek knowingly and intentionally removed the portion of Plaintiff's reasonable accommodation to wear is hat, both were done in retaliation for Plaintiff's recent first Amendment complaints about his inadequate medical care. This is

---

[7] ***Beattie v. Haleen,*** No. 2:18-cv-03372-JGB (Ex), 2021 U.S. Dist. LEXIS 68632, at n16 (C.D. Cal. Mar. 2, 2021); See ***Jett v. Penner,*** 439 F.3d 1091, 1097 (9th Cir. 2006) (prisoner plaintiff opposing summary judgment was "entitled to an inference that [prison doctor] was aware of the filed grievance, medical slips, and aftercare instructions in [Plaintiff's] medical record").

Hartsock's Migraine Lawsuit

sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment activities in the future. On 7-13-23 Plaintiff submitted Medical Form #328405 informing Centurion of the possible error, a request for accommodation, and the likelihood of ADA retaliation. (See attached Exhibit "L").

57. SARAH Snowden and Leek regularly meet and recently Capt. Houghett has been in regular contact with them to continue (and obviously conspire) the retaliatory treatment against Plaintiff. SARAH Snowden, Houghett, and Leek had a meeting of the minds to **continue to** violate Plaintiff's First Amendment rights, after the initial retaliatory acts against Plaintiff. SARAH Snowden and Capt. Houghett conspired with Leek to retaliate against Plaintiff for his recent First Amendment complaints about his inadequate medical care. Defendants Snowden, Leek, Brewer, and Houghett sought to punish Plaintiff for a perceived use of the grievance and legal system pertaining to Plaintiff's health care. Defendants intentionally degraded and/ or humiliated Plaintiff because of his disability status and perceived use of the grievance and legal system.

58. Plaintiff's consistent complaints of blurry vision, alone, could reasonably constitute a serious medical need, see ***Koehl v. Dalsheim,*** 85 F.3d 86, 88 (2d Cir. 1996).

59. On August 7, 2023 at 4PM Capt. Houghett told Plaintiff she had, "spoken with everyone" and "because [Plaintiff has] sunglasses that completely wrap around [Plaintiff's] eyes" Plaintiff doesn't need to wear a hat indoors", so "anytime [Plaintiff] enters a building [Plaintiff] needs to remove the hat." As stated supra **section xiv,** Plaintiff's prescription sunglasses aren't dark enough and possibly lighter than is original pair, which warrants the need for the protection the hat provides. Plaintiff has repeatedly explained to Houghett about medical not evaluating Plaintiff prior to this and Plaintiff's inability to access medical services and others, explained below, as well as not being allowed to access all Meals (as Plaintiff has been forced out of the chow hall because of his hat due to this rule), Chapel, work opportunities, Houghett is standing by her order, which also prevents Plaintiff from fully eating at times, in violation of the Eight Amendment.

60. In July-August 2023, Plaintiff has contacted the ISF Warden, Tricia Pretorius, via institutional mail about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Pretorius told Plaintiff to write medical which Plaintiff has and **cannot access because of Plaintiff's disability**. Plaintiff has contacted his assigned Caseworker, McCluskey, via institutional mail and electronic email, about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Plaintiff has orally explained to his housing Unit's Caseworker Schuetz, C/M Webb, and Duggan about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Schuetz, Duggan, C/M Webb, and McCluskey **refused or failed to exercise their authority** to intervene on Plaintiff's behalf to rectify the situation. Plaintiff has contacted his Housing Units' Complex Director, Unit Team Manager Mikles, via

Hartsock's Migraine Lawsuit

institutional mail, about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability. Mikles blamed Plaintiff for his problem and **refused or failed to exercise his authority** to intervene on Plaintiff's behalf to rectify the situation. (See attached Exhibit "M").

61. None of the Defendants identified within this section have received training regarding their legal obligations under the ADA.

<u>xi.</u>    <u>FAILURE TO INTERVENE DENIAL OF MEDICAL CARE</u>

62. On or about June 23, 2023 Plaintiff submitted a Medical form to SARAH Snowden, which was a coherent and highly detailed complaint describing constitutionally inadequate medical care from Duprey, including that Plaintiff was indigent and that commissary NSaids historically were not effective for Plaintiff's migraine pain.

63. On or about June 26, 2023 SARAH Snowden condoned and/or turned a blind eye to constitutionally inadequate medical care from Duprey, and responded to Plaintiff stating, "[purchase commissary NSaids]". **On or about June 29, 2023 when Indiana Ombudsman Bureau allegedly contacted Snowden about it, Snowden allegedly lied informing them that Plaintiff had a prescription for pain medication and actually did not.**

64. Plaintiff also submitted multiple coherent and highly detailed complaints, to Bumgardner and orally to ADA Russell, about the denial and/or delay of medical treatment concerning his migraines. (See attached Exhibits "A-B"). Although "non-medical personnel not directly involved in an inmate's medical care are usually not liable for their review and/or denial of medical grievances," _**Dobbey v. Randle**_, 2015 U.S. Dist. LEXIS 113635, 2015 WL 5245003, at *9 (N.D. Ill. Aug. 26, 2015) (citing _**Gevas v. Mitchell**_, 492 Fed. Appx. 654, 660 (7th Cir. 2012)), "[a]n inmate's correspondence to a prison administrator may ... establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." _**Perez**_, 792 F.3d at 781-82 (citing _**Vance v. Peters**_, 97 F.3d 987, 993 (7th Cir. 1996)). "The plaintiff must demonstrate that 'the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" _**Arnett**_, 658 F.3d at 755-56 (quoting _**Vance,**_ 97 F.3d at 993).

65. On 7-13-23 Plaintiff submitted Medical Form #328405 informing Centurion of the possible error, a request for accommodation, and the likelihood of ADA retaliation. (See attached Exhibit "L").

Hartsock's Migraine Lawsuit

66. Plaintiff has been unable to attend at least Two (2) medical appointments[8], both for separate scenarios within Plaintiff's body including but not limited to his severe chronic migraines and regular inflammation in Plaintiff's hands as well as issues with the ineffectiveness of Plaintiff's vertigo medication when his migraines are not being treated, get a flu shot ,the recent knee injury Plaintiff has suffered, and the monitoring/treatment of Plaintiff's nutritional intake from receiving a nutritionally inadequate religious vegan diet that is the subject of a civil rights case and Preliminary Injunction, in Southern District Court , Terre Haute Division Case # 2:23-cv-00289-JMS-MKK since the revocation of his reasonable accommodation to wear his hat and sunglasses at all times (except for identification purposes).

67. **Both** Bumgardner and Snowden **either refused or failed to exercise their authority** to intervene on Plaintiff's behalf to rectify the situation.

68. Defendants Russell and Phegley are each Bumgardner's supervisors. Russell and Phegley are both aware through written and oral communications from Plaintiff and other ISF inmates, prior to these incidents that Bumgardner was either refusing and/or failing to exercise her authority to intervene on ISF inmates' behalf, including Plaintiff's, to rectify situations that violate or probably violate Federal constitutional or statutory rights, in retaliation for inmates, including Plaintiff, that exercise their First Amendment rights. Russell and Phegley's acts and omissions effectively condoned Bumgardner's retaliatory actions and violate the First & Eighth Amendment.

69. Bumgardner, Snowden, Russell, and Phegley violated Plaintiff's First & Eighth Amendment rights.

### xii.    FIRST AMENDMENT RETALIATION

70. Indiana code 11-11-1-2, states in relevant part, "The commissioner shall implement a departmental procedure in which a committed person may submit grievances arising out of the administrative acts of the department that affect that person. Although the procedure should encourage flexibility and informality in the resolution of grievances, it must be consistent with the following minimum requirements:"..." (4) The department **may not undertake any act or practice that would** discipline a person for, or **otherwise discourage or limit him from, utilizing the grievance procedure.**"(emphasis added)

---

[8] Medical appointments 7-14-23 and 7-17-23.

Hartsock's Migraine Lawsuit

71. Plaintiff submitted multiple coherent and highly detailed complaints to Bumgardner about the denial and/or delay of medical treatment concerning his migraines.[9]

72. Bumgardner failed to exercise her authority to intervene on Plaintiff's behalf to rectify the situation or even simply forward a copy of Plaintiff's complaints about his unconstitutional medical care to the warden or her designee that had authority over SARAH Snowden, which continued and/or exacerbated Plaintiff's unnecessary suffering described herein.

73. Donna Bumgardner has repeatedly attempted to thwart or limit Plaintiff from complaining about constitutional violations within ISF in retaliation for his recent First Amendment activities, including those described herein. This is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment activities in the future.

74. Plaintiff's First Amendment complaints about his medical care prior to June 9, 2023 medical visit and subsequent refusal to provide and/or intervene to provide Plaintiff with legally adequate medical care (that meets state law requirements) was a motivating factor in not providing and/or intervene to provide Plaintiff with medical care that meets state law requirements, which is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future.

### xiii.    NOT A DISAGREEMENT WITH A DOCTOR'S COURSE OF TREATMENT

#### a.    Migraines:

75. The Seventh Circuit application of "disagreeing with course of treatment" does not apply in this case. [10]

76. As described within this complaint there is not a disagreement with the course of treatment prescribed, since there is no course of treatment prescribed at all, as Duprey stated to Plaintiff on June 9, 2023 that he would "renew all of [Plaintiff's] medications" and didn't. This malicious lie gave Plaintiff the false impression that his migraine medication was being renewed, this delayed Plaintiff's ability/knowledge to challenge

---

[9] See e.g. *Diggs v. Ghosh,* 850 F.3d 905, 908 (7th Cir. 2017) (noting the plaintiff alleged he told the warden of his concerns in person four or five times and submitted multiple grievances, at least one of which was reviewed by the warden's office); *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (noting the plaintiff had sent "many letters" to the Warden); *Snow v. Obiasi,* 2021 U.S. Dist. LEXIS 185414, 2021 WL 4439421, *9-10 (N.D. Ill. Sept. 28, 2021) (noting the plaintiff alleged he stopped the warden to speak with him twice and sent him several letters).
[10] An inmate's "dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to show the doctor was deliberately indifferent to a serious medical need. *Johnson v. Dominguez,* 5 F.4th 818, 826 (7th Cir. 2021)) (citing *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006)).

Hartsock's Migraine Lawsuit

the non-renewal for almost a month, again delaying Plaintiff's relief from suffering described herein.

### b. Severe Photosensitivity:

77. Plaintiff wasn't made aware of the removal of the reasonable accommodation to wear his hat indoors until Capt. Houghett told him on 7-13-23. Nor was plaintiff medically assessed by anyone to determine if it wasn't still needed. Prior to that Plaintiff had regularly been allowed to wear his Hat and sunglasses at all times (except for identification purposes).

78. On August 7, 2023 at 4PM Capt. Houghett told Plaintiff she had,"spoken with everyone" and "because [Plaintiff has] sunglasses that completely wrap around [Plaintiff's] eyes" Plaintiff doesn't need to wear a hat indoors", so "anytime [Plaintiff] enters a building [Plaintiff] needs to remove the hat." As stated supra **section xiv,** Plaintiff's prescription sunglasses aren't dark enough and possibly lighter than is original pair, which warrants the need for the protection the hat provides. Plaintiff has repeatedly explained to Houghett about medical not evaluating Plaintiff prior to this and Plaintiff's inability to access services explained below, as well as not being allowed to access all Meals (as Plaintiff has been forced out of the chow hall because of his hat), Chapel, work opportunities, due to this rule, Houghett is standing by her order, which prevents Plaintiff from eating at times in violation of the Eight Amendment.

79. In July-August 2023, Plaintiff has contacted the ISF Warden, Tricia Pretorius, via institutional mail about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Pretorius told Plaintiff to write medical which Plaintiff has and **cannot access because of Plaintiff's disability**. Plaintiff has contacted his assigned Caseworker, McCluskey, via institutional mail and electronic email, about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Plaintiff has orally explained to his housing Unit's Caseworker Schuetz, C/M Webb, and Duggan about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability, Schuetz, Duggan, C/M Webb, and McCluskey **refused or failed to exercise their authority** to intervene on Plaintiff's behalf to rectify the situation. Plaintiff has contacted his Housing Units' Complex Director, Unit Team Manager Mikles, via institutional mail, about not receiving constitutionally adequate medical care and being discriminated against because of Plaintiff's disability. Mikles blamed Plaintiff for his problem and **refused or failed to exercise his authority** to intervene on Plaintiff's behalf to rectify the situation. (See attached Exhibit "M").

80. On September 1, 2023 Capt. Houghett, and C/W Hacker threatened to "throw" Plaintiff into segregation despite these defendants knowing from previous interactions with Plaintiff that he had severe photosensitivity, again informing them Plaintiff had a disability, and that Plaintiff would just forego getting his meal and at least three (3)

Hartsock's Migraine Lawsuit

other inmates in Plaintiff's chow line after him were wearing hats and were not told to remove their hats, threatened with conduct reports or segregation. These Defendants did this in retaliation for Plaintiff's Free Speech activity and is sufficiently adverse to chill or deter a person of ordinary firmness from exercising their First Amendment activities in the future. Inmates regularly wear their hats in the chow hall as they are generally only in the chow hall for 3-4 minutes.

81. None of the Defendants identified within this section have received training regarding their legal obligations under the ADA.

<div align="center"><u>xiv.</u>     <u>ADA and Rehabilitation Act Violations:</u></div>

82. IDOC and Centurion receive federal financial assistance and offer programs and activities to prisoners incarcerated at Putnamville.

83. Centurion is a private entity that offers public accommodations under Title III of ADA.[11]

84. Heather Russell is ISF's ADA Coordinator. This position is juggled with competing job duties, preventing Russell from adequately performing ADA coordinator job duties. Russell is not qualified to be ADA Coordinator, though IDOC Disability policy 00-02-202 is silent as to the qualification to be ADA coordinator.

85. Russell is not qualified pursuant to 28 C.F.R § 35. 107(a) and ISF does not have an adequate grievance system to challenge reasonable accommodation denials pursuant to 28 C.F.R § 35. 107(b).

86. Hundreds of disabled ISF inmates have filed a Request for Reasonable Accommodations in 2023 that have either been ignored or they just have not received a response.

87. On or about August 14, 2023, ADA Coordinator Russell twice ordered Law Library Supervisor Edie Nichols to remove State Form # 57267 (6-23) Request for Reasonable Accommodation forms from the Law Library access to the inmate population.

88. On August 22, 2023 during the monthly Dorm Representative meeting Phegley, Snowden and Major Hinton ordered ISF inmates to stop filing Requests for Reasonable Accommodations.

---

[11] Unlike Title II of the ADA, Title III of the ADA covers certain private entities. 42 U.S.C. § 12182(a). Title III of the ADA prohibits "discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Id. A private entity is considered to offer public accommodations "if the operations of such entities," including the "professional office of a health care provider, hospital, or other service establishment," affects commerce. 42 U.S.C. 12181(7) (F). "Commerce" is defined as "travel, trade, traffic, commerce, transportation, or communication . . . among the several States." 28 C.F.R. § 36.104.

Hartsock's Migraine Lawsuit

89. For actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations under 28 U.S.C. § 1658(a).[12] See *Fletcher v. Louisiana* Department of Transportation & Development, 2019 U.S. Dist. LEXIS 119779, 2019 WL 3240056, at *4 (M.D. La. 2019), appeal filed, Case No. 19-30668 (5th Cir. 2019).

90. Plaintiff is a qualified disabled person, as described supra **Sections iii-viii**, pursuant to Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 701.

91. Plaintiff is "eligible" to receive medical services while he is incarcerated. See generally *Estelle v. Gamble,* 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed 2d 251 (1976).

92. Plaintiff's disabilities are;
    a. Severe Photosensitivity;
    b. Sever chronic vertigo;
    c. Severe Chronic Migraines;
    d. Chronic Pain;

93. Plaintiff's major Life Activities or major bodily functions significantly impacted are:
    a. Seeing;
    b. Reading;
    c. Walking;
    d. Showering;
    e. Concentrating;
    f. Typing;
    g. Focusing;

94. There are 144 pairs of three foot long bright white fluorescent light tubes in each housing unit at ISF, including Plaintiff's. They are also prevalent throughout all other ISF buildings and **most of IDOC buildings in general.** There are 40 pairs of four, three foot long bright white fluorescent light tubes in the dining hall.

95. Plaintiff proffers five separate legal theories;

    a) **Disparate Impact[13]**: ISF/IDOC rule prohibiting hats to be worn indoors discriminates against disabled inmates with light sensitivity issues accessing

---

[12] § 1658. Time limitations on the commencement of civil actions arising under Acts of Congress.
(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.
[13] To state a disparate impact claim under the ADA or Rehabilitation Act, Plaintiff must allege that a facially neutral policy "fall[s] more harshly on one group than another and cannot be justified by [a non-discriminatory] necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003) (quoting *Teamsters v. United States,* 431 U.S. 324, 335-36, 97 S. Ct. 1843, 52 L. Ed. 2d 396 & n.15 (1977)). A plaintiff can show disparate impact

Hartsock's Migraine Lawsuit

programs, services or activities that are indoors with bright lighting. Centurion's rule described infra ¶ c), does the same thing.

b) **Disparate Treatment:** Plaintiff's accommodation was revoked out of prejudice and foreclosed Plaintiff's ability to access the programs, services, or activities described herein.

c) **Failure to Accommodate:** not reasonably accommodating Plaintiff's severe photosensitivity has prevented Plaintiff from _**fully**_ accessing All Meals (as Plaintiff has been forced out of the chow hall threatened with physical violence, conduct reports and segregation because of his hat), Chapel (can't access chapel at all), work opportunities,,[14] Recreation services[15] (prevented from accessing 99% of all in dorm recreation services, 20 % of gym rec services, and 100% of outdoor rec services), Law Library Services, medical services[16], Segregation Showers I was prevented from 100 % of showers when denied my wraparound sunglasses from 6-1-23 thru 6-14-23), the service of Accommodation, Job Assignment program, and Commissary services, as ISF has a rule not permitting hats to be worn indoors, because of my disability. Centurion has a sign posted at the entrance of medical services (e.g. sick call, chronic care, etc., ) that, "No hats...beyond this point", which also has prevented Plaintiff from accessing medical services as he no longer has the ability to adequately protect his eyes from the many bright lights within Health Care Unit.[17] (See attached Exhibit "J"). On 7-20-23 IDOC informed Plaintiff,"I am currently working on getting a temporary order for you to wear your hat at all times/indoors until you are seen by the eye doctor." (See attached Exhibit "K"). However, this has not materialized as of this date and Plaintiff continues to be in pain without medical attention. (See attached Exhibit "L").

---

either by comparing persons in a protected class to persons outside the protected class, or by comparing persons within the same class; in other words, inter-class disparate impact claims are viable. See, e.g., _**Amundson**_, 721 F.3d at 874 (citing _**Olmstead v. L.C.,**_ 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999)). No showing of intent to discriminate is required. See _**Raytheon**_, 540 U.S. at 52-53. But "[b]ecause the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes, courts must be careful to distinguish between [disparate treatment and disparate impact] theories." _**Raytheon,**_ 540 U.S. at 53 (citation and internal quotation marks omitted).
[14] Access to showers, all Meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. _**Jaros**_, 684 F.3d at 672 (noting that inmate access to showers and all Meals is a program or activity);
[15] The Seventh Circuit has therefore held (under the materially identical Rehabilitation Act) that state prisons cannot deny prisoners access to "recreation," _**Norfleet v. Walker,**_ 684 F.3d 688, 690 (7th Cir. 2012)
[16] The ADA applies to prisoners in state prisons. _**Pennsylvania Dep't of Corrs. v Yeskey,**_ 524 U.S. 206, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)(phrase "services, programs, or activities" in ADA includes prison medical programs); _**United States v. Georgia,**_ 546 U.S. 151, 154, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006)(ADA properly abrogated state sovereign immunity if the state's alleged misconduct independently violates the Fourteenth Amendment).
[17] Under Title II of the ADA, "a public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." _**J.V.,**_ 813 F.3d at 1299 (quoting _**Robertson,**_ 500 F.3d at 1197 ("When a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim.")).

Hartsock's Migraine Lawsuit

d) **ADA Retaliation:** C/W Hacker and Capt. Houghett, collectively have threatened to "throw" Plaintiff in segregation for his ADA communication to them during Chow Hall movement. Plaintiff's reasonable accommodation was revoked in retaliation for utilizing the ADA reasonable accommodation procedures. Revoked Plaintiff's reasonable accommodation to wear his hat despite knowing Plaintiff could not access All Meals (as Plaintiff has been forced out of the chow hall threatened with physical violence, conduct reports and segregation because of his hat), Chapel (can't access chapel at all), work opportunities,, Recreation services (prevented from accessing 99% of all in dorm recreation services, 20 % of gym rec services, and 100% of outdoor rec services), Law Library Services, medical services , Segregation Showers I was prevented from 100 % of showers when denied my wraparound sunglasses from 6-1-23 thru 6-14-23), the service of Accommodation[18], Job Assignment program, and Commissary services, as ISF has a rule not permitting hats to be worn indoors, because of my disability without it, because of his previous complaints about ADA reasonable accommodation requests.

e) **Unlawful Method of Administration[19]:** Plaintiff alleges eight specific violations: (1) that IDOC/ISF fails to individually identify inmates with disabilities or employs no system or an inadequate system for identifying and tracking prisoners with disabilities, IDOC uses an under-inclusive definition of disability, and definitions are based on diagnosis rather than functional impairment. This definition violates the standard set forth by the American Correctional Association. This policy violates the ADA because "[t]he determination of whether an impairment substantially limits a major life activity [must] be made without regard to the ameliorative effects of mitigating measures such as medication." 42 U.S.C. § 12102(4) (E) (i) (I); _Kemp v. Holder,_ 610 F.3d 231, 236 (5th Cir. 2010). (2) IDOC does not recognize the ADAAA, (3) IDOC does not give Russell the authority to reasonably accommodate an inmate with disability,(4) employs no system or an

---

[18] In Wagoner (where, as discussed below, the prison failed to repair the backrest on plaintiff's wheelchair), the Seventh Circuit noted, without elaboration: "Wagoner could have claimed that the wheelchair itself is a service under either [the ADA or Rehabilitation Act], because it is necessary to accommodate his paraplegia, but IDOC provided Wagoner with a new wheelchair before he filed his grievance about the backrest." _Wagoner,_ 778 F.3d at 593. This suggests that, at least in some circumstances, an accommodation may itself be a service under the ADA, meaning a failure to accommodate inherently effectuates a denial of services. The parties have not briefed whether a CPAP machine is a service, and the court will not consider this theory.

[19] A public entity may not . . . utilize criteria or methods of administration . . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability . . . [or] [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.28 C.F.R. § 35.130(b) (3) (i) & (ii). "In other words, a public entity cannot actively undercut the ability of a public program to benefit those with disabilities." _Van Velzor v. City of Burleson,_ 43 F. Supp. 3d 746, 752 (N.D. Tex. 2014). "[A]n omission as well as a commission can be an actionable method of administration." _Dunn,_ 318 F.R.D. at 665. "The methods-of-administration regulation makes clear that a know-nothing, do-nothing policy of non-administration is a privately actionable violation of the ADA, at least when plaintiffs can show that it has the effect of discriminating." Id. at 665 n.12.

Hartsock's Migraine Lawsuit

inadequate system for prisoners to request accommodations and submit grievances regarding non-accommodation, (5) failing to appoint or train ADA coordinators or other administrators responsible for oversight of compliance with the ADA, (6) failing to train staff regarding the requirements of the ADA, (7) failing to promulgate policies and procedures regarding the treatment of prisoners with disabilities; and (8) that IDOC/ISF has an inadequate system for processing requests for reasonable accommodations and fails to track such requests. Under the ADA, "employing no system or an inadequate system for prisoners to request accommodations and submit grievances regarding non-accommodation" can be an unlawful method of administration if it has the effect of discriminating against inmates with disabilities. *Dunn,* 318 F.R.D. at 665; see *Lewis,* 2021 U.S. Dist. LEXIS 63293, 2021 WL 1219988, at *48-50, 52; *Armstrong v. Brown,* 857 F. Supp. 2d 919, 933 (N.D. Cal. 2012) (finding a violation of the ADA if the county jail lacked "functional and timely grievance procedures . . . to request and obtain disability accommodations").With this accommodation of wearing a hat & sunglasses at all times (except for identification purposes) Plaintiff will obtain benefits that he ordinarily could not have by reason of his disabilities, and not because of some quality that he shares with others.

96. IDOC and Centurion do not permit issuance of prescription sunglasses through their services. All other options explored by Plaintiff's eye doctor **have failed.**

97. On 7-13-23, Sgt. Clark called the Law Library and required Plaintiff to remove his hat so Plaintiff had to leave because it was too bright.

98. Plaintiff has been unable to attend at least Two (2) medical appointments[20], , both for separate scenarios within Plaintiff's body including but not limited to his severe chronic migraines and regular inflammation in Plaintiff's hands as well as issues with the ineffectiveness of Plaintiff's vertigo medication when his migraines are not being treated, get a flu shot ,the recent knee injury Plaintiff has suffered, and the monitoring/treatment of Plaintiff's nutritional intake from receiving a nutritionally inadequate religious vegan diet that is the subject of a civil rights case and Preliminary Injunction, in Southern District Court , Terre Haute Division Case # 2:23-cv-00289-JMS-MKK since the revocation of his reasonable accommodation to wear his hat and sunglasses at all times (except for identification purposes).

99. Plaintiff is unable to see, read, study, concentrate, write, type, and perform other daily tasks without significant difficulty because of his disabilities described herein, the accommodation to wear a hat and sunglasses at all times is both reasonable and necessary to avoid discrimination on the basis of disability. Plaintiff has been wearing his

---

[20] Medical appointments 7-14-23 and 7-17-23.

Hartsock's Migraine Lawsuit

hat and sunglasses at all times since his arrival at ISF, ***including in restricted housing***, in May & June 2023.

100.    On June 19, 2023 Plaintiff received a pair of prescription sunglasses sent in by his family as a reasonable accommodation of IDOC. They were supposed to be a darker tint and be able to fully cover his eyes. However, due to the monetary limits set by IDOC and inability to find out if they were a darker tint prior to shipping Plaintiff didn't know they were the same tint as his previous pair until they arrived, of which Plaintiff informed medical staff at that time. This still presented the problem of too much light hitting Plaintiff's eyes.

101.    Even with a darker tinted prescription sunglass, Plaintiff still has to be able to see. The hat allows Plaintiff to easily tilt his head in a manner to easily use the brim of his hat as a shield for light that is too bright.

102.    All staff at the prison do not receive ADA training, none that Plaintiff has spoken to are aware of the ADAAA. Instead of heeding the statutory mandate, prison staff ignored or denied- on the thinnest of pretexts- Plaintiff's requests.

### xv.    Medical malpractice:

103.    Pursuant to I.C. 34-18-8-6, Plaintiff seeks less than $15,000 for any medical malpractice claim to eliminate the requirement for a medical review board.

### xvi.    SUPERVISORY OFFICIALS:

104.    Defendants Zatecky, Rains, Phegley, Russell, Cornelson, and Snowden each had supervisory roles at ISF from November 2, 2022 through June 9, 2023.

105.    Each one of them was aware of an abundant number of ADA violations and Medical care problems as well as First Amendment retaliation at ISF with respect to Medical care and /or Incarcerated Individuals being retaliated against for exercising their First Amendment rights. One particularly glaring safety hazard was the widespread ADA procedural barriers faced by Incarcerated Individuals every week. Incarcerated Individuals are routinely fed misinformation about the ADA procedures.

106.    In addition to the numerous medical, ADA violations and retaliation issues, there were persistent issues within the ADA process. Custody staff filed reports describing the procedural barriers.

107.    Health and Medical audits/inspections were performed perfunctorily, new officer training on ADA compliance and First Amendment retaliation was "basic" and "simplistic," or non-existent.

Hartsock's Migraine Lawsuit

108.     Each of the Supervisory Defendants knew of these serious, ongoing problems. Despite this knowledge, the Supervisory Defendants took no actions to correct any of these persistent issues at ISF prior to Plaintiff's incidents.

109.     Cornelson, Snowden, Phegley, Russell, Rains, Zatecky, failed/refused to properly train and adequately train and supervise themselves and/or oversee the training and supervision of appropriate staff and inmates in the acquisition of ADA accommodations, medical care thwarting First Amendment retaliation, preparation and service of a vegan diet and sanitation at Putnamville Correctional facilities Medical Services and other areas of ISF.

110.     Supervisory Defendants were made aware of the problems with First Amendment retaliation, unconstitutional medical care, and ADA violations through the grievance process and incident reports.

111.     Warden Zatecky, Monday through Friday, always has a meeting to review the previous day's incidents. Meaning, lack of constitutional adequate medical care, ADA violations, and First Amendment retaliation issues, which were required by policy to be documented in incident reports, would have been reviewed at those meetings Deputy Warden Rains, Major Hinton, Phegley, and most department heads would go to the meeting. Cornelson was the head of the training department from 2014- present. This is admissible evidence supporting that each of the Supervisory Defendants attended the daily meeting, and lack of constitutional adequate medical care, ADA violations, and First Amendment retaliation issues were discussed in the meeting, it would be reasonable for a jury to find that each of the Defendants knew about the frequency of lack of constitutional adequate medical care, ADA violations, and First Amendment retaliation issues at ISF.

112.     Supervisory Defendants knew about lack of constitutional adequate medical care, ADA violations, and First Amendment retaliation issues due to their pervasiveness. Plaintiff has submitted admissible evidence indicating that there was common and widespread issues of lack of constitutional adequate medical care, ADA violations, and First Amendment retaliation issues at ISF, including: Medical care and ADA accommodations, that included but was not limited to an ADA process that was a dead end, and perfunctory inspections. As explained previously, these common, dangerous conditions and policy lapses help demonstrate that each of the Supervisory Defendants knew about the dangerous conditions.

a)  **Training Department Head Cornelson**

113.     Cornelson was head of ISF's training department. He had been in that role for almost ten years. In his role, Cornelson was responsible for coordinating training functions and supervising the training department. He also had the responsibility of ensuring staff were correctly trained related to ADA accommodations and reporting issues, medical care access or reporting on Incarcerated Individuals not receiving

medical care and first amendment retaliation. This responsibility required Cornelson to evaluate on an ongoing basis the effectiveness and sufficiency of the on-the-job training and an obligation to make additions and changes as needed. Cornelson had the authority to include additional training on medical / ADA compliance and thwarting First Amendment retaliation procedures and policies as part of the new employee training given to new correctional officers. This deficient training, in an environment known to experience numerous ADA violations and unlawful methods of administration was an obvious risk. However, despite these responsibilities, there is also evidence supporting a finding that the training around First Amendment retaliation issues was deficient in multiple areas.

### b) Former Warden Zatecky

114.    Zatecky had been serving as Warden at ISF for approximately two years. As Warden, Zatecky carried a variety of responsibilities. He was responsible for proactively reviewing prison infrastructure to ensure safety, for approving proposals to change post orders for developing the facility's mission for ensuring policies were implemented consistently and providing oversight to all facility operations. He was also ultimately responsible for ensuring that medical acre and ADA compliance issues were conducted properly, and for ensuring that inspections were addressed and investigated properly. Zatecky had the ultimate authority to oversee IDOC staff to ensure that Plaintiff received constitutional adequate medical care, ISF was compliant with their ADA legal obligations, and staff were not thwarting First Amendment activity.

### c) Deputy Warden Rains

115.    Rains is the deputy warden at ISF, and had been in that role for approximately two years. As deputy warden, Rains was responsible for developing, establishing, and implementing institutional policies, procedures, and objectives, supervising the facility when the Warden was absent, training staff and evaluating their performance, reviewing the monthly inspection reports, reviewing incident reports, and ensuring the general safety of the facility. Rains was also responsible for supervising the physical plant director, who was in charge of keeping track of recurring maintenance problems and finding ways to fix them on a system wide basis.

### d) Deputy Warden Phegley

116.    Phegley is the deputy warden at ISF, and had been in that role for approximately two years. As deputy warden, Phegley was responsible for developing, establishing, and implementing institutional policies, procedures, and objectives, concerning ADA compliance and overseeing the ADA coordinator

Hartsock's Migraine Lawsuit

### xvii.    FIRST AMENDMENT RETALIATION:

117.    On 8-22-23 Defendant Duggan wrote a false negative work evaluation against Plaintiff and fired Plaintiff from his job, which has the added effect of preventing Plaintiff from getting another job for 90 days and is permanently in Plaintiff's prison file, On 9-5-23 Defendant Duggan knowingly and intentionally wrote a false conduct report against Plaintiff, in retaliation for Plaintiff's complaints about his inadequate medical care and ISF staff not reasonably accommodating plaintiff's disabilities, which is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future and violates the First Amendment.

118.    On September 1, 2023 Capt. Houghett, and C/W Hacker threatened to "throw" Plaintiff into segregation despite0these defendants knowing from previous interactions with Plaintiff that he had severe photosensitivity, again informing them Plaintiff had a disability, and that Plaintiff would just forego getting his meal and at least three (3) other inmates in Plaintiff's chow line after him were wearing hats and were not told to remove their hats, threatened with conduct reports or segregation. These Defendants did this in retaliation for Plaintiff's Free Speech activity and is sufficiently adverse to chill or deter a person of ordinary firmness from exercising their First Amendment activities in the future. Inmates regularly wear their hats in the chow hall as they are generally only in the chow hall for 3-4 minutes.

119.    The conditions of Plaintiff's confinement at ISF deprived Hartsock of life's necessities by depriving him of the right to be free of retaliation for exercising Plaintiff's First Amendment right to Free Speech, right to be free of Cruel & Unusual Punishment, the right to reasonable accommodations for his Physical disabilities.

120.    As a direct and proximate result of the acts and omissions of the Defendants, Hartsock suffered the following injuries and damages:

a)  Violation of his constitutional rights under the First Amendment to the United States Constitution to be free of retaliation for exercising Free Speech activities;

b)  Violation of his constitutional rights under the Eighth Amendment to the United States Constitution to be free of Cruel & Unusual Punishment;

c)  Violation of his federal statutory rights under Americans With Disabilities Act and Rehabilitation Act to reasonably accommodate plaintiff's disabilities;

d)  Loss of physical liberty;

e)  Mental and emotional anguish;

f)  Medical expenses;

Hartsock's Migraine Lawsuit

g) Irreparable harm; and

h) Additional financial losses, including costs associated with enforcing his civil rights pursuant to section 1983, and the laws of the state of Indiana.

121.    The acts and omissions of the Defendants violated the following clearly established and

well settled federal constitutional rights of Hartsock:

a) Freedom from punishment without a legitimate penological basis;

b) Freedom from Cruel & Unusual Punishment;

c) Freedom from retaliation for exercising his Free Speech activities;

d) Freedom from not using the least restrictive means standard to achieve the same penological goal; and

e) Freedom from not being discriminated against;

f) Freedom from not being reasonably accommodated for his physical disabilities to participate in services and/or programs.

122.    At all times relevant Defendants were acting under the color of law. Defendants acted maliciously, wantonly, willfully, and to benefit themselves personally and not within the scope of their employment.

## VIII. STATEMENT OF CLAIMS:

### Count #1 (Cruel & Unusual Punishment)
### (42 U.S.C. §1983; U.S. Constitution under the Eighth Amendment Cruel & Unusual Punishment claim against Duprey, Bumgardner, Snowden, Mikles, McCluskey, Webb, Schuetz and Houghett (individual Defendants) and Snowden, Zatecky, Rains, and Cornelson (Supervisory Defendants)

123.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

124.    Plaintiff was denied a basic necessity (medical care) by Defendant(s) Duprey, Bumgardner, Snowden, Mikles, McCluskey, Webb, Schuetz, and Houghett, as described supra **Section VII (x) & VII (xi),** by Supervisory defendants Snowden, Zatecky, Rains, and Cornelson as described supra **Section VII (xvi).**

125.    Plaintiff was denied a basic necessity (food) by Defendant(s) Houghett, as described supra **Section VII (x) (b) & VII (xiii) (b),** by Supervisory defendants Snowden, Zatecky, Rains, and Cornelson as described supra **Section VII (xvi).**

126.    Duprey and Houghett violated Plaintiff's Eighth Amendment rights under the U.S. Constitution.

## Count #2 (Cruel & Unusual Punishment)
### (42 U.S.C. §1983; Indiana State Constitution under the Eighth Amendment Cruel & Unusual Punishment claim against Duprey, Bumgardner, Snowden, Mikles, McCluskey, Webb, Schuetz and Houghett (individual Defendants) and Snowden, Zatecky, Rains, and Cornelson (Supervisory Defendants)
Plaintiff incorporates by reference all previous paragraphs as if restated here.

127.    Plaintiff was denied a basic necessity (medical care) by Defendant(s) Duprey, Bumgardner, Snowden, Mikles, McCluskey, Webb, and Houghett, as described supra **Section VII (x) & VII (xi),** by Supervisory defendants Snowden, Zatecky, Rains, and Cornelson as described supra **Section VII (xvi).**

128.    Plaintiff was denied a basic necessity (food) by Defendant(s) Houghett, as described supra **Section VII (x) (b) & VII (xiii) (b),** by Supervisory defendants Snowden, Zatecky, Rains, and Cornelson as described supra **Section VII (xvi).**

129.    Duprey violated Plaintiff's Eighth Amendment rights under the Indiana Constitution.

## Count #3 (Retaliation)
### (42 U.S.C. §1983; First Amendment Retaliation claim against Snowden, Duprey, Bumgardner, Leek, Houghett, Brewer, Duggan, Houghett, and Hacker)

130.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

131.    Plaintiff's First Amendment complaints about his medical care prior to June 9, 2023 medical visit and subsequent refusal to provide and/or intervene to provide Plaintiff with legally adequate medical care (that meets state law requirements) was a motivating factor in not providing and/or intervening to provide Plaintiff with medical care that meets state law requirements, which is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future, as described supra **Section xi-xii.**

132.    Plaintiff's First Amendment complaints about his medical care prior to July 13, 2023 and to provide Plaintiff with legally adequate medical care (that meets state law requirements) was a motivating factor in the subsequent alteration of his reasonable

Hartsock's Migraine Lawsuit

accommodation and/or failure to follow Plaintiff's eye specialists recommendations by Nurse Leek and Nurse Brewer, which is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future, as described supra **Section VII (x) (b)**. Sarah Snowden and Capt. Houghett are attached to this claim with Leek via the conspiracy spring.

133.    Plaintiff's First Amendment complaints and reasonable accommodation requests to the Capt. Houghett, and Hacker, was a motivating factor in defendants threats of physical harm, conduct reports, and segregation is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future, as described supra **Section VII (xiii (b) and xvii).**

134.    Plaintiff's First Amendment complaints was the reason Defendant Duggan wrote a negative work evaluation and false conduct report against Plaintiff and fired Plaintiff from his job, as described supra **Section VII (xvii),** which had the added effect of preventing Plaintiff from getting another job for thirty days, in retaliation for Plaintiff's complaints about his inadequate medical care and ISF staff not reasonably accommodating plaintiff's disabilities, which is sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights in the future and violates the First Amendment.

135.    Supervisory defendants Snowden, Zatecky, Rains, and Cornelson as described supra **Section VII (xvi).**

136.    Russell and Phegley's acts and omissions, as Bumgardner's supervisors, effectively condoned Bumgardner's retaliatory actions and violate the First Amendment, as described supra **Section xi.**

137.    Russell, Phegley, Rains, Cornelson, Zatecky, Snowden, Duprey, Bumgardner, Leek, Duggan, Hacker, Houghett, and Brewer violated Plaintiff's First Amendment rights against retaliation.

## Count #4 (IIED)
### (Indiana state tort violation of Intentional Infliction of Emotional Distress Claim against Snowden, Duprey, Leek, and Brewer)

138.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

139.    Defendants (Snowden, Duprey, Leek, and Brewer) have committed the acts and omissions described supra, that are truly extreme and outrageous, including but not limited to Defendants sought to punish Plaintiff for a perceived use of the grievance and legal system pertaining to Plaintiff's health care. Defendants intentionally degraded

Hartsock's Migraine Lawsuit

and/ or humiliated Plaintiff because of his disability status and perceived use of the grievance and legal system.

140.    Defendants knew or knew that there is at least a high probability that their conduct will cause physical harm and/ or severe emotional distress to Plaintiff as Plaintiff had previously filed complaints regarding many similar actions.

141.    Defendants acts and omissions described supra, in fact caused physical harm, severe emotional distress, including but not limited to severe anxiety and depression, loss of sleep, migraines, and spiritual stress to Plaintiff.

142.    Defendants have committed Intentional Infliction of Emotional Distress against Plaintiff in violation of Indiana law.

### Count #5 (NIED)
### (Indiana state tort violation of Negligent Infliction of Emotional Distress Claim against Snowden, Duprey, Leek, and Brewer)

143.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

144.    The Defendants' (Snowden, Duprey, Leek, and Brewer) conduct fell below the applicable standard of care, when handling Plaintiff's medical care or information regarding previously established reasonable accommodation(s).

145.    The Plaintiff suffered an injury described supra.

146.    Defendants' acts and omissions described supra, as described supra, was a cause-in-fact of the injury suffered by Plaintiff.

147.    Defendants have committed Negligent Infliction of Emotional Distress against Plaintiff in violation of Indiana law.


### Count #6 (Breach of Contract #1)
### (Indiana state tort violation of Breach of Contract Claim against Centurion, Snowden, Duprey, Leek, Brewer)

148.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

149.    Plaintiff was a third party beneficiary of the contract between IDOC and Centurion

150.    Defendant(s) Centurion, Duprey, Snowden, Leek, and Brewer, breached the duty of the contract by violating any federal, state and/or local laws or ordinances.

Hartsock's Migraine Lawsuit

151.    Defendant(s) Centurion, Duprey, Leek, Brewer, and Snowden, violated Indiana's tort law of Breach of Contract.

### Count #7 (Negligence)
### (Indiana state tort violation of Negligence Claim against Snowden, Duprey, Leek, and Brewer)

152.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

153.    Defendants (Snowden, Duprey, Leek, and Brewer) owed a duty to Plaintiff to provide or cause to be provided, reasonable medical attention to Plaintiff or dissemination of information regarding previously established reasonable accommodation(s).

154.    Defendants did not fulfill the applicable standard of care, breaching their duty to Plaintiff.

155.    The Breach of duty approximately caused the Plaintiff's actual compensable injury.

156.    Defendants have committed negligence as applied to Plaintiff, as described supra.

### Count #8 (Negligence per se)
### (Indiana state tort violation of Negligence per se Claim against Snowden, Duprey, Leek, and Brewer)

157.    Plaintiff incorporates by reference all previous paragraphs as if restated here.

158.    "In Indiana, a violation of a Statute [I.C.11-11-1-2; 11-10-3-2; and 35-46-2-1] and [federal statute HIPAA 42 U.S.C. §§ 1320d-1 to d-7 and Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 701] may serve as the basis for Negligence per se. The unexcused or unjustified violation of a duty proscribed by statute constitutes negligence per se in the statute is intended to protect the class of persons in which the Plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Parks v. Danek Med., Inc.,* No. 2:95 CV 206, 1999 U.S. Dist. LEXIS 18662, 1999 WL 1129706, at *11 (N.D. Ind. June 17, 1999). "Under negligence per se, the law accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct. A person whose acts are negligent per se can still invoke the excuses available to any negligent actor such as emergency response or lack of capacity." *Cook v. Whitsell-Sherman,* 796 N.E.2d 271, 276 (Ind. 2003) (citing restatement (second) of Torts § 288A; *Gore v. People's Sav. Bank,* 235 Conn. 360, 665 A.2d 1341, 1345 n. 10 (1995)). Negligence per se does not

definitively establish liability for negligence, but it permits a presumption of negligence. *Parks*, 1999 U.S. Dist. LEXIS 18662, 1999 WL 1129706 at 11.

159.    Plaintiff who is an Inmate and disabled is in the class of persons protected, Defendant's failed in their duty to require and/or provide reasonable medical attention for Plaintiff and not to retaliate against Plaintiff for utilizing the IDOC grievance policy or exercising his First Amendment rights, which inflicted unnecessary pain and suffering.

160.    Defendants violated these respective Federal, state and/or local statute, ordinances and/or laws;

    a.    HIPAA 42 U.S.C. §§ 1320d-1 to d-7 (as to Defendant(s) Duprey ¶¶ **VII (x)(a)** )

    b.    I.C.11-11-1-2; (as to Defendant(s) Snowden ¶¶ **VII (xi)** , Leek¶¶ **VII(x) (b)** , and Brewer¶¶ **VII(x) (b)**))

    c.    I.C. 11-10-3-2; (medical care) (as to Defendant(s) Centurion¶¶ **VII(xiv)** , Duprey ¶¶ **VII(xiv)**, Snowden ¶¶ **VII(xiv)**, Leek¶¶ **VII(xiv)**, and Brewer¶¶ **VII(xiv)**))

    d.    I.C. 35-46-2-1;(Civil Rights violations) (as to Defendant(s) Centurion¶¶ **VII(xiv)** , Duprey ¶¶ **VII(xiv)**, Snowden ¶¶ **VII(xiv)**, Leek¶¶ **VII(xiv)**, and Brewer¶¶ **VII(xiv)**))

    e.    42 U.S.C. § 12101 et seq., ; (as to Defendant(s) Centurion¶¶ **VII(xiv)** , Duprey ¶¶ **VII(xiv)**, Snowden ¶¶ **VII(xiv)**, Leek¶¶ **VII(xiv)**, and Brewer¶¶ **VII(xiv)**))

    f.    29 U.S.C. § 701; (as to Defendant(s) Centurion¶¶ **VII(xiv)**, Duprey ¶¶ **VII(xiv)**, Snowden ¶¶ **VII(xiv)**, Leek¶¶ **VII(xiv)**, and Brewer¶¶ **VII(xiv)**))

161.    Defendants Centurion, Duprey, Snowden, Leek, and Brewer have violated Indiana State Tort Law Negligence per se.

### Count #9 (ADA)
### (42 U.S.C. § 12102 et seq; Americans with Disabilities Act discrimination and failure to reasonably accommodate claims against Heather Russell (In her Official Capacity as IDOC ADA Coordinator) and Centurion)

162.    Plaintiff incorporates by reference all previous paragraphs as if stated here.

Hartsock's Migraine Lawsuit

163.     Defendants were made aware of Plaintiff's multiple disabilities, describe supra **Section VII (xiv)** ,as well as his multiple requests for reasonable accommodations, however Plaintiff was repeatedly denied FULL access to services and/or programs (e.g., All Meals (as Plaintiff has been forced out of the chow hall because of his hat) ,Chapel, work opportunities,, recreation services, medical services, Law Library services, etc.,) described supra based on Disparate Impact; Disparate Treatment; Failure to Accommodate; and  ADA Retaliation.

164.     Defendants violated the Americans with Disabilities Act described herein.

### Count # 10 (Rehabilitation Act)
### (29 U.S.C. § 701, Section 504 of the Rehabilitation Act discrimination and failure to reasonably accommodate claims against Heather Russell (In her Official Capacity as IDOC ADA Coordinator) and Centurion)

165.     Plaintiff incorporates by reference all previous paragraphs as if stated here.

166.     Defendants were made aware of Plaintiff's multiple disabilities, describe supra **VII (xiv)** ,as well as his multiple requests for reasonable accommodations, however Plaintiff was repeatedly denied FULL access to services and/or programs (e.g., All Meals (as Plaintiff has been forced out of the chow hall because of his hat) ,Chapel, work opportunities,,  recreation services, medical services, Law Library services, etc.,) described supra based on Disparate Impact; Disparate Treatment; Failure to Accommodate; and  ADA Retaliation.

167.     Defendants violated the Rehabilitation Act described herein.

### VIII.    STATEMENT OF RELIEF

WHEREFORE, Plaintiff respectfully prays this Court to:

168.     Declaratory relief stating Defendants violated ADA 42 U.S.C. § 12101 et seq., Rehabilitation Act, 29 U.S.C. § 701, First and/or Eighth Amendments rights and/or Indiana's state tort laws.

169.     Declare Defendants actions and omissions unconstitutional unlawful.

170.     Order, upon proper motion a preliminary and permanent injunction requiring Defendants to provide Plaintiff with constitutionally adequate medical care for his chronic migraines.

Hartsock's Migraine Lawsuit

171.      Order, upon proper motion a temporary restraining Order preventing defendants from not allowing Plaintiff to wear his hat and sunglasses at all times (except for identification purposes).

172.      Order, upon proper motion a preliminary and permanent injunction requiring Defendants to permit Plaintiff to wear his hat and sunglasses at all times (except for identification purposes).

173.      Order, upon proper motion a preliminary and permanent injunction requiring Defendants to provide a lawful method of Administrative process to Request Reasonable Accommodations.

174.      Order, upon proper motion a preliminary and permanent injunction requiring Defendants to implement a procedure for receiving and processing prisoners' requests for accommodations and appeals of denials, including specified forms, repositories to submit forms, and assistance for prisoners in completing and submitting forms. The Department will appoint an ADA coordinator for each of its facilities, as well as a state-wide coordinator, to handle ADA requests, process appeals, produce monthly reports, and assess compliance.

175.      Order, upon proper motion a preliminary and permanent injunction requiring Defendants to provide initial and annual ADA training to correctional officers and enhanced training to ADA coordinators.

176.

177.      Declare judgment in Plaintiffs favor and against Defendants.

178.      Order, upon proper motion, an immediate preliminary and permanent injunction requiring Defendants to not retaliate against Plaintiff.

179.      Provide compensatory damages (where applicable) to Plaintiff in an amount determined by a jury.

180.      Provide punitive damages (where applicable) to Plaintiff in an amount determined by a jury.

181.      Provide nominal damages (where applicable) to Plaintiff in an amount determined by a jury.

Hartsock's Migraine Lawsuit

182.     All fees associated with filing this claim.

183.     All other relief deemed just and proper in the premises

### JURY DEMAND:

Plaintiff demands a jury trial on all issues and matters so triable.

Respectfully submitted,

Date: September 13, 2023

Plaintiff, pro se
Joseph Hartsock #966460
Putnamville Correctional Facility
1946 West U.S. Highway 40
Greencastle, IN 46135

### VERIFICATION

I, Joseph Hartsock, declare under penalties of perjury that the foregoing representations are true and accurate to the best of my knowledge.

Plaintiff, pro se
Joseph Hartsock #966460

Hartsock's Migraine Lawsuit